### LEPPALA *v.* CLEVELAND IRON-MINING CO.

MASTER AND SERVANT—ASSUMED RISK — CONTRIBUTORY NEGLI-
GENCE.

Where a mining company had provided a suitable and safe platform for its employés to stand on when engaged in barring down ore, which would become clogged in the chutes constructed to discharge the ore into ore cars, an experienced workman who, without being authorized or directed to do so, climbed into one of the cars for the purpose of performing that duty, was guilty of negligence, and assumed the risk of being injured by contact with a trolley wire overhead.

Error to Marquette; Stone, J.    Submitted January 5, 1900.    Decided January 23, 1900.

Case by John Leppala, administrator of the estate of Daniel S. Leppala, deceased, against the Cleveland Iron-Mining Company, for negligently causing the death of plaintiff's intestate.    From a judgment for defendant on verdict directed by the court, plaintiff brings error.    Affirmed.

Plaintiff's decedent was a miner, and at the time of his death had worked in the defendant's mine two years.    It

is claimed that he was killed by coming in contact with a
trolley wire used in conveying cars loaded with ore along
the levels of the mine to the shaft, where the ore was
dumped from the cars into skips, and hauled to the sur-
face. The situation, the method of doing the work, and
the circumstances under which the deceased died, are so
well and concisely stated in the brief of Mr. Wood, one of
the attorneys for defendant, that we adopt his statement:

"At the time this accident occurred, the deceased was
filling cars on the second level, at raise No. 2. The ore
was deposited in the raise above, and came down, through
a chute, into cars standing beneath. When the car was
full, it was hauled to the shaft on rails by means of an
electric motor, and taken to the surface in skips. At the
chute where the accident occurred, there was a ladder-way
going from the level to the drift above, and so constructed
that it passed alongside of the chute. The chutes were
constructed with holes in the sides, so that, when clogged
with ore, the men loading cars could go upon the lad-
der, and, using an iron bar, pry the ore loose, so that
it would run through the chute into the cars below. The
level running from the shaft, at the point where the
accident occurred, was 7 feet wide and $7\frac{1}{2}$ or 8 feet high.
The rails ran in the center of the level. The cars used to
carry the ore to the shaft were 4 feet wide, 6 feet long, and
4 feet high, and stood 6 inches above the rails. Directly
above the center of the tracks ran the trolley wire, which
was 6 inches from the top of the level. This wire fur-
nished the power to haul the cars to the shaft. Directly
across the tracks from the chute was a platform running
alongside the car, 18 inches high, provided by the com-
pany for the men to stand on when barring the ore at
the mouth of the chute. At the time of the accident, the
deceased was barring down ore from the chute into the
car. The car was about half full of ore at the time. The
chute had become clogged, and the deceased was trying
to make the ore run. He climbed upon the ladder, and
tried to bar from there, but was unable to start the ore.
Coming down from the ladder, he came around in front
of the chute to bar in the mouth of the chute, and, instead
of getting on the platform provided for the purpose, he
climbed into the car, inserted the iron bar in the chute,
and commenced to bar. In so doing he raised his head,

and came in contact with the trolley wire overhead, and received a shock, which, it is alleged in the declaration, was the cause of his death."

The negligence charged is the failure to —

"Make the wire safe by locating it above the reach of the employés while engaged about their work, to properly cover and insulate the said wire, and to inform the deceased and the other employés working in the said mine and drifts and stopes of the danger incurred by taking hold or touching the said unprotected wire."

The court directed a verdict for the defendant.

*Clark & Pearl*, for appellant.

*George Hayden* and *James C. Wood*, for appellee.

Grant, J. (*after stating the facts*). The reasons given by the court for his directions were that no negligence was shown on the part of the defendant, and no damage to the plaintiff. The voltage used was 220. Other plants like this had been in operation in other mines for several years, some of them having a voltage of 500. No accident had ever happened. Workmen had frequently come in contact with this and other wires, receiving a shock which did no harm. No instance is shown where any contact with a voltage of 220 had resulted in injury. It is urgently insisted that the testimony fails to show that death was caused by contact with the wire. Deceased was only a few months past 21 years of age. There was no evidence that he had contributed anything to the support of his father. We, however, do not choose to base our decision upon either of these questions. We think it clear that the deceased, when he got into the car to bar down the ore, assumed the risk, and was guilty of contributory negligence. The sides of the car sloped towards the center. The danger of doing this work in the car is apparent, and is clearly shown by the testimony, because of the danger of being struck by the ore when it started to run. The defendant had provided suitable and

safe places for its employés to stand in barring down the ore. The deceased had never been authorized or directed to get into the car for that purpose, and no custom to so do was shown. For this reason the judgment must be affirmed.

The other Justices concurred.